## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARROWPOINT CAPITAL CORP., <br><br>       Plaintiff, <br><br>    v. <br><br> ARROWPOINT ASSET MANAGEMENT, LLC; ARROWPOINT PARTNERS GP, LLC; ARROWPOINT PARTNERS GP2, LLC; ARROWPOINT FUNDAMENTAL OPPORTUNITY FUND, LP; and ARROWPOINT STRUCTURED OPPORTUNITY FUND, LP, <br><br>       Defendants. | Civil Action No. _____ |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Arrowpoint Capital Corp., by and through its attorneys, brings this lawsuit for injunctive relief, actual damages, punitive damages, trebled damages, costs, attorney's fees, and other appropriate relief, arising out of the unlawful actions of Defendants Arrowpoint Asset Management, LLC ("AAM"), Arrowpoint Partners GP, LLC ("APG"); Arrowpoint Partners GP2, LLC ("APG2"); Arrowpoint Opportunity Fund ("AOF") and Arrowpoint Structured Opportunity Fund ("ASF") (collectively, "Defendants"), including:

- Willful infringement of Arrowpoint Capital's ARROWPOINT trademarks;

- Misappropriation of Arrowpoint Capital's ARROWPOINT trademarks;

- Unfair competition;

- False advertising; and

- Violations of the Delaware Deceptive Trade Practices Act.

## Parties, Jurisdiction, and Venue

1.      Plaintiff Arrowpoint Capital Corp. is a corporation organized under Delaware law.

2.      Arrowpoint Capital Corp. is a holding corporation whose subsidiaries, Arrowood Indemnity Company and Arrowood Surplus Lines Insurance Company, which are also Delaware corporations, conduct business under the trade name Arrowpoint Capital..  Arrowpoint Capital Corp.'s subsidiaries (individually or collectively, "Arrowpoint Capital"), provide insurance and investment-related financial services to customers throughout the United States.

3.      In 2007, Arrowpoint Capital acquired the United States insurance operations of Royal & Sun Alliance Insurance Group plc ("Royal"), a publicly traded United Kingdom corporation that has had insurance operations in the United States for more than 200 years. Arrowpoint Capital then began managing the run-off of Royal's United States policies.   As part of that business, the insurance operations of Arrowpoint Capital manage assets derived from premiums to maintain sufficient reserves to meet its financial obligations to policyholders. Arrowpoint Capital's insurance operations have also managed assets derived from premiums on behalf of other, unaffiliated insurers.

4.      Upon information and belief, Defendant AAM is a limited liability company organized under Delaware law with its principal place of business in Denver, Colorado.  AAM was formed in or about December 2007, and it transacts or conducts business as Arrowpoint Partners.

5.      Upon information and belief, Defendant APG is a limited liability company organized under Delaware law with its principal place of business in Denver, Colorado.  APG was formed in or about January 2009.

6.   Upon information and belief, Defendant APG2 is a limited liability company organized under Delaware law with its principal place of business in Denver, Colorado.  APG2 was formed in or about April 2009.

7.   Upon information and belief, Defendant AOF is a limited partnership organized under Delaware law with its principal place of business in Denver, Colorado.  AOF was formed in or about February 2009.

8.   Upon information and belief, Defendant ASF is a limited partnership organized under Delaware law with its principal place of business in Denver, Colorado.  ASF was formed in or about April 2009.

9.   Upon information and belief, Defendants provide asset management and investment services for institutional investors and private clients throughout the United States.

10.   Upon information and belief, Defendants manage a number of private investment funds or pools, commonly referred to as "hedge funds."

11.   This action arises under the laws of the United States; in particular Sections 32, 43(a), and 43(c) of the Lanham Act, and the Delaware common and statutory law of trademark infringement and unfair competition.  Accordingly, the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and principles of supplemental jurisdiction.

12.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### The ARROWPOINT Family of Marks

13.   In or about March 2007, Arrowpoint Capital adopted "ARROWPOINT" as a trademark for its operation's financial products and services.

14.   Since March 2007, Arrowpoint Capital has used the ARROWPOINT mark, and variations of the mark, continuously in interstate commerce in connection with the marketing,

promotion, offering for sale, sale, and distribution of its operation's financial products and services.

15.     Arrowpoint Capital has applied to the U.S. Patent & Trademark Office (the "PTO") to register, and has received registrations for, a family of ARROWPOINT marks, as set forth below.

16.     In January 2008, Arrowpoint Capital obtained federal Registration No. 3484564 for the word mark ARROWPOINT CAPITAL in International Class ("I.C.") 36 in connection with its insurance-related products and services, based on use in interstate commerce by at least March 4, 2007.

17.     In January 2008, Arrowpoint Capital obtained federal Registration No. 3484563 for the design mark **Arrowpoint Capital** in I.C. 36 in connection with insurance-related products and services, based on use in interstate commerce by at least March 4, 2007.

18.     In January 2008, Arrowpoint Capital filed an intent to use application, Serial No. 77076070, for the ⋀—— logo in I.C. 35, I.C. 36, and I.C. 45 for various insurance-related services.

19.     In January 2008, Arrowpoint Capital filed an intent to use application, Serial No. 77369553, for the word mark ARROWPOINT CAPITAL in I.C. 35 and I.C. 45 for various insurance-related services.

20.     In January 2008, Arrowpoint Capital filed intent to use application, Serial No. 77370505, for the design mark **Arrowpoint Capital** in I.C. 35 and I.C. 45 for various insurance-related services.

21.     In July 2008, Arrowpoint Capital filed intent to use applications, Serial Nos. 77527145 and 77527140, for the word mark ARROWPOINT CAPITAL and the

**Arrowpoint CAPITAL** design mark in I.C. 36 for administration of and consulting in employee retirement plans.

22.     In August 2008, Arrowpoint Capital filed an intent to use application, Serial No. 77554724, for the word mark ARROWPOINT ADVISORS in I.C. 35, I.C. 36, and I.C. 45 for various insurance-related services.

23.     In September 2009, Arrowpoint Capital filed an application, Serial No. 77836169, to register the word mark ARROWPOINT CAPITAL in I.C. 36 for investment management services, based on first use in interstate commerce by at least March 4, 2007.

24.     Each of these registrations and applications is valid and continuing, and copies of each are attached hereto as **Exhibit A**.

25.     Arrowpoint Capital has also used the ARROWPOINT marks on its Web site, www.arrowpointcap.com, which it acquired in November 2006 to promote financial products and services, including investment management services.

26.     The ARROWPOINT marks are arbitrary as applied to Arrowpoint Capital's services, and thus are inherently strong and distinctive.

27.     Since 2007, Arrowpoint Capital has invested substantial time and money in the marketing and promotion of products and services using the ARROWPOINT marks.

28.     Through Arrowpoint Capital's long and continuous use and substantial investment in marketing and promotion, the ARROWPOINT marks have come to be known, recognized, and identified as originating with Arrowpoint Capital.

29.     Arrowpoint Capital has acquired substantial, invaluable goodwill in the ARROWPOINT marks.

**<u>Defendants' Infringement and Resulting Actual Confusion</u>**

31.     In February 2008, AAM's principal, David Corkins, acquired the domain names www.arrowpointpartners.com, www.ap-am.com, and www.ap-am.net, all of which feature the name "Arrowpoint Partners" and the  logo.  Upon information and belief, these Web sites provide investment-related products and services and are accessible to investors nationwide.

32.     In June 2008, AAM filed a statement of trade name with the Colorado Secretary of State indicating that it intended to transact business under the trade name "Arrowpoint Partners."

33.     From January through April 2009, AAM formed or caused to be formed other entities that feature the term "Arrowpoint," including APG, AOF, APG2, and ASF, all in the field of investment-related products and services.

34.     The marketing and promotional materials used by Defendants prominently feature the "Arrowpoint" name in various forms, including "Arrowpoint Partners" and the  logo.

35.     Defendants' uses of the "Arrowpoint" name in various forms and the  logo for investment-related products and services were at all times without Arrowpoint Capital's consent or authorization.

36.     Defendants' uses of the "Arrowpoint" name in various forms and the  logo for investment-related products and services are likely to cause confusion, mistake, and deception in the marketplace, including among the consuming public.

37.     Indeed, Defendants' uses of the "Arrowpoint" name and the  logo for investment-related products and services have already caused actual confusion, including, among other instances, the following:

a.   In 2009, the Federal Reserve Bank of New York created the Term Asset-Backed Securities Loan Facility ("TALF").   Both AOF and ASF offer TALF-eligible asset-backed securities in their portfolios.   Arrowpoint Capital submitted an application to purchase TALF-eligible asset-backed securities offered by Citigroup, Inc. ("Citigroup"), a global diversified financial services holding company with which Arrowpoint Capital regularly transacts business.   In or about August 2009, Citigroup notified Arrowpoint Capital that its application to acquire the TALF-backed securities was delayed due to confusion caused by Defendants' submission of an application for the same securities under the "Arrowpoint" name.   An applicant's position in the queue to acquire securities offered by Citigroup is based on the date when the application is submitted, and, upon information and belief, Citigroup's confusion caused Arrowpoint Capital to lose its position in the queue.

b.   In or about August 2009, Arrowpoint Capital attempted to participate in a corporate bond offering through Royal Bank of Scotland ("RBS"), a global banking and financial services provider with which Arrowpoint Capital regularly transacts business.   Arrowpoint Capital was advised that it could not participate in this offering, however, because RBS believed that Arrowpoint Capital was a hedge fund operating out of Colorado – as Defendants are.   Dispelling this confusion required substantial efforts by Arrowpoint Capital.

c.  In or about September and October 2009, Arrowpoint Capital received multiple communications from Morgan Stanley & Co ("Morgan Stanley"), a global financial services firm with which Arrowpoint Capital regularly transacts business, regarding an address change for AAM.  As these communications indicated, Morgan Stanley first changed the address of AAM's account in Denver to that of Arrowpoint Capital's investment and insurance operations in Charlotte.  After Arrowpoint Capital contacted Morgan Stanley to try to clear up this confusion, Morgan Stanley sent a further communication indicating that it had changed the address for AAM's account from Charlotte back to Denver.

d.  In or about November 2009, Arrowpoint Capital placed an order for $4 million in bonds but was surprised to learn that it got only a $2 million allocation.  Arrowpoint Capital booked the trade with Goldman Sachs, because the default settling firm, global financial services provider UBS, did not have an established relationship with Arrowpoint Capital.  Arrowpoint Capital later learned that UBS, which controlled the allocation, mistakenly believed Arrowpoint Capital was a "fast money" account – a term used to describe hedge funds, such as AAM.  Such accounts typically are not given priority in the new issue market and, upon information and belief, UBS's mistaken belief that Arrowpoint Capital was AAM caused Arrowpoint Capital to lose half of its order.

38.  Arrowpoint Capital has been forced to spend substantial time and resources attempting to dispel the confusion caused by Defendants' use of the "Arrowpoint" name and the  logo.

39.     As a result of the confusion caused by Defendants' use of the "Arrowpoint" name and the  logo, Arrowpoint Capital has experienced problems with securities trade settlements and denials of trade requests, resulting in economic harm and potential exposure to liability.

40.     Arrowpoint Capital discovered during the summer of 2009 that Defendants were using "Arrowpoint" in connection with the marketing, advertising, promotion, offering for sale, and sale of their investment-related products and services.

41.     Upon discovering Defendants' infringement, in or about July 2009, Arrowpoint Capital promptly sent a cease-and-desist letter to Defendants.

42.     Defendants rejected Arrowpoint Capital's demands and have continued to operate using the "Arrowpoint" name and the  logo in connection with their investment-related products and services.

43.     When Arrowpoint Capital's efforts to prevent Defendants' continuing infringement failed and instances of actual confusion escalated, Arrowpoint Capital initiated this action to protect its rights in its ARROWPOINT marks.

44.     Defendants' uses of the "Arrowpoint" name and the  logo are likely to cause, have caused, and will continue to cause, confusion in the marketplace, among consumers and financial institutions.

45.     Defendants' uses of the "Arrowpoint" name and the  logo have diminished the goodwill that Arrowpoint Capital has established in its ARROWPOINT marks.

46.     Money damages alone cannot compensate Arrowpoint Capital for the loss of goodwill that has occurred and will continue to occur as a result of Defendants' infringement of the ARROWPOINT marks.

47.     Upon information and belief, Defendants, as of the time of the filing of this Complaint, continue to market, advertise, promote, and sell their products and services both online and through written communications directed to clients and prospective clients throughout the United States using the "Arrowpoint" name and the  logo.

48.     Consequently, Arrowpoint Capital has been forced to file this lawsuit to protect its rights in its ARROWPOINT-related marks.

### Count I – Trademark Infringement

49.     Arrowpoint Capital hereby realleges and incorporates by reference the allegations of the preceding Paragraphs 1 through 48 as if fully set forth herein.

50.     This cause of action arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51.     Arrowpoint Capital is the owner of all right, title, and interest in and to the ARROWPOINT marks, for which Arrowpoint Capital holds current, valid registrations and applications for registrations with the PTO.

52.     Defendants' continuing uses of the "Arrowpoint" name and the  logo in connection with their investment-related goods and services as alleged above have caused actual confusion in the marketplace as to the source, sponsorship, or approval of Defendants' products and services.  Specifically, sophisticated financial institutions have been misled to believe that Defendants are in some way affiliated with, sponsored by, licensed by, or otherwise related to Arrowpoint Capital.

53.     Defendants' continuing uses of the "Arrowpoint" name and the  logo in connection with their investment-related goods and services are likely to cause confusion, mistake, or deception among the consumers as to the source, sponsorship, or approval of

Defendants' products and services in that consumers are likely to be misled to believe that Defendants are in some way affiliated with, sponsored by, licensed by, or otherwise related to, Arrowpoint Capital.

54.     Defendants' are willfully continuing their uses of the "Arrowpoint" name and the  logo in the marketing, advertising, promotion, sale, and offering for sale of their investment-related products and services with actual knowledge of Arrowpoint Capital's rights in the ARROWPOINT marks.

55.     Defendants' uses of the "Arrowpoint" name and the  logo at all times have been without Arrowpoint Capital's authorization, permission, or consent.

56.     Defendants' uses of the "Arrowpoint" name and the  logo in connection with their investment-related products and services constitute trademark infringement under 15 U.S.C. § 1114.

57.     Arrowpoint Capital is without an adequate remedy at law, because Defendants' infringement has caused and continues to cause irreparable injury to the goodwill that Arrowpoint Capital has established in the ARROWPOINT marks.

58.     Defendants have refused Arrowpoint Capital's demand that they cease their illegal conduct, and their infringement of the ARROWPOINT marks will continue unless it is enjoined by this Court.

59.     Defendants' acts of trademark infringement also have caused Arrowpoint Capital to sustain substantial monetary damages, loss, and injury in an amount to be determined at the trial of this action.

## **Count II – Unfair Competition and False Advertising**

60.     Arrowpoint Capital hereby realleges and incorporates by reference the allegations of the preceding Paragraphs 1 through 48 as if fully set forth herein.

61.     This cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     Defendants' uses of the "Arrowpoint" name and the  logo in conjunction with their investment-related products and services are likely to cause, have caused, and will continue to cause confusion, mistake, or deception as to Defendants' affiliation, connection, or association with Arrowpoint Capital and as to the sponsorship or approval of the Defendants' products and services by Arrowpoint Capital.

63.     Defendants have misrepresented and falsely advertised the origin, characteristics, and qualities of their investment-related products and services, all in violation of 15 U.S.C. § 1125(a).

64.     Arrowpoint Capital is without an adequate remedy at law because Defendants' unfair competition and false advertising have caused and continue to cause irreparable injury to Arrowpoint Capital.

65.     Defendants have refused Arrowpoint Capital's demand that they cease their illegal conduct, and their unlawful acts will continue unless they are enjoined by the Court.

66.     Defendants' acts of unfair competition and false advertising also have caused Arrowpoint Capital to sustain substantial monetary damages, loss, and injury in an amount to be determined at the trial of this action.

## Count III – Common Law Trademark Infringement and Misappropriation

67.    Arrowpoint Capital hereby realleges and incorporates by reference the allegations of the preceding Paragraphs 1 through 48 as if fully set forth herein.

68.    This claim is to remedy acts of trademark infringement and misappropriation under Delaware common law.

69.    Defendants' unauthorized uses of the "Arrowpoint" name and the  logo are likely to cause, have caused, and will continue to cause confusion and mistake as to the origin, source, and identity of Defendants' investment-related products and services and Arrowpoint Capital's investment-related products and services.

70.    Defendants' unauthorized uses of the "Arrowpoint" name and the  logo misappropriate and trade upon the reputation and goodwill that Arrowpoint Capital has established in its ARROWPOINT marks.

71.    Defendants' unauthorized uses of the "Arrowpoint" name and the  logo unjustly divert from Arrowpoint Capital to Defendants the benefits arising from the reputation and goodwill that Arrowpoint Capital has established in its ARROWPOINT marks.

72.    Defendants' acts of infringement and misappropriation, unless enjoined by this Court, will continue to cause Arrowpoint Capital irreparable damage, loss, and injury, for which Arrowpoint Capital has no adequate remedy at law.

73.    Defendants' acts of infringement and misappropriation also have caused Arrowpoint Capital substantial monetary damage, loss, and injury, in an amount to be determined at the trial of this action.

74.     Defendants have engaged and continue to engage in this infringement and misappropriation knowingly and willfully, so as to justify the assessment of punitive damages against them in an amount to be determined at the trial of this action.

### Count IV – Violation of the Delaware Deceptive Trade Practices Act

75.     Arrowpoint Capital hereby realleges and incorporates by reference the allegations of the preceding Paragraphs 1 through 48 as if fully set forth herein.

76.     This cause of action arises under the Delaware Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §2532.

77.     Defendants' unauthorized uses of the "Arrowpoint" name and the  logo have created and will continue to create a likelihood of confusion or misunderstanding as to the source or origin of Defendants' investment-related goods or services.

78.     Defendants' unauthorized uses of the "Arrowpoint" name and the  logo have created and will continue to create a likelihood of confusion or misunderstanding as to their affiliation, connection, association with, or endorsement by, Arrowpoint Capital.

79.     Through their unauthorized uses of the "Arrowpoint" name and the  logo, Defendants misrepresent that their goods or services are sponsored or approved by Arrowpoint Capital.

80.     Defendants' unauthorized uses of the "Arrowpoint" name and the  logo constitute a violation the Delaware Deceptive Trade Practices Act.

81.     Defendants' violations of the Delaware Deceptive Trade Practices Act have caused Arrowpoint Capital irreparable damage, loss, and injury, for which Arrowpoint Capital has no adequate remedy at law.

82.     Defendants' violations of the Delaware Deceptive Trade Practices Act also have caused Arrowpoint Capital substantial monetary damage, loss, and injury, in an amount to be determined at the trial of this action.

83.     Defendants' violations of the Delaware Deceptive Trade Practices Act will continue unless enjoined by this Court.

84.     Defendants have violated and continue to violate the Delaware Deceptive Trade Practices Act knowingly and willfully, so as to justify the assessment of treble damages against them, in an amount to be determined at the trial of this action.

### Verification

The Declaration of David Shumway, submitted in support and verification of the Complaint, is attached hereto as **Exhibit B** and incorporated herein by reference.

### Request for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Arrowpoint Capital hereby makes a demand for a trial by jury as to all issues herein so triable.

### Prayer for Relief

WHEREFORE, Arrowpoint Capital prays for the following relief:

(a)     That Defendants be held liable under each claim for relief set forth in this Complaint;

(b)     That this Court enter a preliminary and permanent injunction prohibiting Defendants, their agents, servants, employees, attorneys, and all other persons in concert or participation with them, from using the "Arrowpoint" name in any form or the  logo as a trade name, trademark, or domain name in the advertising, marketing, promotion, offering for sale, sale, or distribution of Defendants' products and services;

(c)     That Arrowpoint Capital be awarded all monetary damages it has suffered by reason of Defendants' unlawful acts set forth herein, together with legal interest from the date of accrual thereof;

(d)     That Arrowpoint Capital be awarded three times all monetary damages it has suffered by reason of Defendants' knowing and willful misconduct set forth herein, together with legal interest from the date of accrual thereof, pursuant to 15 U.S.C. § 1117(a) and Del. Code Ann. tit. 6, §2533;

(e)     That Defendants be required to account for and pay to Arrowpoint Capital all profits wrongfully derived by Defendants through their unlawful acts set forth herein, together with legal interest from the date of accrual thereof;

(f)     That Arrowpoint Capital be awarded punitive damages in an amount sufficient to punish and deter Defendants' knowing and willful trademark infringement, misappropriation, unfair competition, and false advertising;

(g)     That Arrowpoint Capital be awarded its reasonable attorney fees, costs, and expenses incurred in this action, pursuant to 15 U.S.C. § 1117 and the Delaware Deceptive Trade Practices Act;

(h)      That Arrowpoint Capital be awarded such other and further relief as this Court deems just and equitable.

**PARKOWSKI, GUERKE & SWAYZE, P.A.**

/s/ Michael W. McDermott
_____
Michael W. Teichman, Esquire (No. 3323)
Michael W. McDermott, Esquire (No. 4434)
800 King Street, Suite 203
Wilmington, DE, 19801
(302) 654-3300
mteichman@pgslegal.com
mmcdermott@pgslegal.com

Dated: February26, 2010